IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 13, 2018

## STATE OF TENNESSEE v. PAMELA MOSES

**Appeal from the Criminal Court for Shelby County**
**No. 14-06502      J. Weber McCraw, Judge**

_____

### No. W2016-01762-CCA-R3-CD

_____

Defendant, Pamela Moses, was placed on intensive probation following the entry of guilty pleas to several offenses. The State filed two petitions to revoke her probation. After a lengthy hearing, the trial court revoked Defendant's probation and ordered the "original judgment of conviction" into execution with additional jail credit for time served in confinement. Defendant argues on appeal that the trial court improperly revoked probation. For the following reasons, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN JJ., joined.

James Thomas (at hearing) and Matthew C. Culotta (on appeal), Memphis, Tennessee, for the appellant, Pamela Jeanine Moses.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jennifer Nichols and Gavin Smith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On April 29, 2015, Defendant entered guilty pleas to theft of merchandise valued at less than $500, tampering with or fabricating evidence, forgery, perjury on an official document, stalking of a judge, and escape from misdemeanor incarceration. *See State v. Pamela Moses*, No. W2015-01240-CCA-R3-CD, 2016 WL 4706707, at *2 (Tenn. Crim. App. Sept. 6, 2016), *perm. app. denied* (Tenn. Jan. 23, 2017). Defendant's charges stemmed from several different events, including swapping tags on items at a department store; fabricating a complaint form to the Tennessee Board of Judicial Conduct against the general sessions judge who had held Defendant in contempt; giving false statements under oath to an agent of the Tennessee Bureau of Investigation ("TBI"); repeatedly contacting the judge both in person and on social media; and jumping out of a police car after having been arrested. In exchange for the guilty pleas, Defendant received an effective sentence of seven years to be served on supervised probation. *Id.* at *4.

Defendant filed a motion to withdraw the guilty pleas. The trial court denied the motion, and this Court affirmed that decision on appeal, remanding the matter to the trial court for correction of clerical errors. *Id.* at *13-14.

On December 21, 2015, the State filed a petition to revoke Defendant's probation. The petition alleged that Defendant violated several rules of her probation. Specifically, the petition alleged the following:

Rule #6 states, "I will allow my probation officer to visit my home, employment site, or elsewhere, will carry out all instructions he or she gives; will report to my probation officer as instructed; will comply with mandates of the Administrative Case Review Committee, if the use of that process is approved by the Court, will comply with a referral to Resource Center Programs, if available, by attending; and will submit to electronic monitoring and community service, if required."

Rule #10 states, "I will observe any special conditions imposed by the Court as listed below:

First 2 years of probation are intensive
Must complete & continue mental evaluation and all recommendations

Absolutely no contact with all victims and witnesses, specifically Judge Phyllis Gardner, Virginia Bozeman, Marline Iverson, & Ryan Fletcher."

An affidavit and accompanying warrant were filed on December 21, 2015. The warrant specified that there was "no bond to be set on this warrant."

On January 13, 2016, the trial judge entered an order setting Defendant's bond at $100,000. The State filed a second petition to revoke probation on January 15, 2016, adding a violation of Rule #14: "[Defendant] will not engage in any assaultive, abusive, threatening, or intimidating behavior. Nor will [Defendant] participate in any criminal street gang related activities as defined by TCA 40-35-121. [Defendant] will not behave in a manner that poses a threat to others or [herself]." On January 25, 2016, the State filed an amended petition to revoke Defendant's probation, recounting the preceding three alleged violations of Rules #6, #10, and #14. That same day, the trial court entered an order revoking Defendant's bond, "with no bond set."

The trial court held a lengthy hearing on the petition. At the hearing, Defendant's probation officer, Brillisha Chapman, explained that Defendant was required to meet with her on the first three Thursdays of every month. Defendant was also required to comply with additional conditions of probation, including refraining from criminal behavior, receiving mental health treatment, and speaking to a forensic social worker.

According to Officer Chapman, Defendant failed to comply with the conditions of her probation. She missed five of her appointments with her probation officer. Even though Defendant provided reasons for the failure to report, Officer Chapman explained that she routinely filed violation petitions for probationers who missed more than two appointments.

Rochelle Reyle, an employee with Alliance Healthcare Services, explained that Defendant was discharged for noncompliance in scheduling and failure to keep routine appointments. Additionally, Defendant refused treatment after her initial psychiatric evaluation and did not consent to medication as recommended. Officer Chapman also used these reasons on Defendant's petition to revoke probation.

The trial court also heard testimony from several members of the Shelby County Sheriff's Office. Apparently, because of Defendant's past behavior, there was a policy in place that Defendant was not allowed to enter a county courthouse without an escort. It is unclear where this policy originated, because it does not appear as a condition of Defendant's probation and no written policy of the Sheriff's Department was introduced at the hearing. Lieutenant Kathy Crowder recalled an incident on December 5, 2015, when Defendant tried to enter the courthouse where Judge Gardner was holding court. Defendant attempted to enter the courthouse without an escort. Deputy Louis Hamlet was called to escort Defendant. When he arrived, Defendant left the courthouse. Approximately thirty minutes later, Defendant tried to utilize another entrance to enter the courthouse without an escort. Sergeant Chad Cunningham testified that Defendant had previously entered the courthouse where Judge Gardner held court. There was also testimony that Defendant had attempted to enter the juvenile court building without an escort.

Defendant did not testify at the hearing on the probation revocation. She presented the testimony of John Paul Anders, who testified that he was a pro se litigant and was going to the law library one day when Defendant was standing in the lobby of the courthouse "waiting on an expert to take her to the law library." After waiting for some time, a female officer came to take Defendant to the law library. Mr. Anders described the officer's behavior while escorting Defendant, recalling that the officer stopped several times to talk to people and was "not being courteous."

At the conclusion of the hearing, the trial court determined that Defendant failed to report to her probation officer on numerous occasions, failed to abide by "reasonable lawful commands and requests" of law enforcement personnel while Defendant was present in the courthouse, and failed to make a "good-faith attempt to follow the mental health aspect of [her] probation." The trial court expressed the desire to resolve the mental health aspect of the case and commented that before Defendant could go "back [to] supervised" probation, the "mental health issue" needed to be "resolved." The trial court noted that Defendant had "been in jail 31 days," questioned "how long it would take to get her properly assessed," and ordered Defendant to "continue with this shock incarceration until the mental health aspect is on track," after which the trial court would "reinstate [Defendant] to supervision with the expectation that there will be no further problems." The trial court went on to say that he planned to "reinstate [Defendant] based on a

meaningful [mental health] assessment and a plan for her to follow" and that the process should be "expedited, . . . [to occur] within a week." The court took a recess during which "calls were made to make certain [Defendant] could get an appointment." The trial court informed Defendant that an appointment for the assessment had been made for Thursday, March 3rd at 3:45 p.m. The trial court told Defendant that the "suspended sentence" was revoked, and added "[i]f you go and if you cooperate and if there is a meaningful assessment, then there will be another order signed on Friday and you'll be released." The trial court recalled that the "agreement was two years intensive probation." The trial court explained that the probation was "not extend[ed] for an additional two years . . . but will still remain the two years from the entry of the plea bargain." The trial court entered a form order finding that Defendant "violated the terms and conditions of the suspension of sentence heretofore granted, and that the original judgment of conviction should be executed upon the defendant." Handwritten on the form are the words "[a]dditional jail credit 1-25-16 to 2-25-16." The order goes on to specify:

> 1. That the suspension of sentence heretofore granted to the above named defendant be and the same is hereby REVOKED;
> 2. That the original judgment of conviction, as spread upon the minutes of this Court and herein incorporated in full by reference, be, and the same is hereby, executed upon the defendant;
> 3. That the cost of this proceeding be, and the same are hereby, taxed to the defendant; AND
> 4. That the place of confinement for the remainder of this sentence is Ordered to be: THE SHELBY COUNTY CORRECTION CENTER.
>
> DO NOT RELEASE ON DETERMINATE RELEASE PROBATION. THE COURT REVOKED THE DEFENDANT'S PROBATION!

Defendant filed an untimely notice of appeal and a pro se motion asking this Court to permit the late-filing of the notice of appeal. In the motion, Defendant admitted that she was represented by counsel at the hearing on the revocation but that she was unsure whether counsel continued to represent her at the time she filed the motion. This Court ordered counsel to file a response. Trial counsel complied. In the response from trial counsel, trial counsel indicated that the trial court signed an order on March 4, 2016, returning Defendant to probation on the "identical

requirements and restrictions of her initial probation order" with credit for the ten months previously completed. Trial counsel asserted uncertainty as to "what provisions of the trial court's ruling [Defendant sought to] review." Attached to this response, counsel included the trial court's March 4, 2016 order returning Defendant to probation. This Court granted a motion to late-file the notice of appeal. After this case was docketed and assigned to a panel of this Court, we realized that Defendant's April 29, 2015 probation order and the trial court's March 4, 2016 order reinstating Defendant to probation did not appear in the technical record transmitted to this Court on appeal. We ordered the trial court to supplement the record with these documents in order to facilitate our review of the issues presented on appeal.

*Analysis*

On appeal, Defendant complains that the trial court erred in revoking her suspended sentence. Specifically, Defendant insists that the proof "contradicts" the trial court's ruling because there was no evidence introduced to show that Defendant violated the terms of her probation by contacting the victims/witnesses, failed to keep in touch with her probation officer, or was discharged from mental health treatment. The State disagrees.

At the outset, we express our sincere perplexity regarding the exact nature of Defendant's argument. Defendant, who was arrested for a violation of probation, and was found to be in violation of the terms and conditions of her probation, was placed back on probation by the trial judge after a hearing—with credit for time already served on probation. The trial court did not extend the term of her probation or cause her to be subject to additional requirements or restrictions. Essentially, the trial court found that Defendant violated the terms of probation and placed her in exactly the same position that she was in prior to the violation. It would appear that Defendant got a pass on violating her probation. Defendant's brief to this Court on appeal does little to resolve our confusion. Defendant's argument section concludes with the following incomplete statement: "It was an abuse of discretion for the trial court to have concluded that the allegations in the State's petition were proven by a preponderance of the evidence because." We interpret Defendant's argument on appeal to be a challenge to the trial court's ultimate finding that she violated the terms and conditions of her probation rather than a complaint that the trial court returned Defendant to probation.

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1). After revoking a defendant's probation, the trial court is authorized to order a defendant to serve the balance of his original sentence in confinement, return a defendant to probation with modified conditions as necessary, or extend the period of probation by no more than two years. T.C.A. §§ 40-35-308, -310. The revocation of probation rests in the sound discretion of the trial court and will not be overturned by this Court absent an abuse of that discretion. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991); *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); *see also State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013) (holding that an abuse of discretion standard with a presumption of reasonableness applies to all sentencing decisions). An abuse of discretion occurs when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see also State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001).

In this case, there is substantial evidence in the record to support the trial court's finding that Defendant violated the terms of her probation. Defendant was required to report to her probation officer on the first three Thursdays of each month. Officer Chapman testified that Defendant missed five of her appointments. In our view, it is irrelevant that Defendant continued to keep in contact with Officer Chapman to provide excuses for missed appointments. The terms and conditions of Defendant's probation required her to report the first three Thursdays of each month. Defendant failed to do so. This violation alone is enough to support the revocation. The State argues that the additional proof at the hearing that Defendant attempted to enter the courthouse without an escort at a time when Judge Gardner was holding court and that Defendant was discharged from mental health treatment were also violations of probation.

With respect to the allegation that Defendant failed to complete mental health treatment as required, a representative from Alliance Health testified that Defendant's file indicated Defendant was discharged from the program for "noncompliance in scheduling and keeping appointments." Defendant argues that the proof is not clear whether Defendant was actually discharged from the program or whether Defendant rescheduled her appointments. However, Defendant failed to present any proof to contradict that of the Alliance Health representative who presented a discharge order listing the reason for the discharge as

"noncompliance." Thus, we determine that there was evidence to support the trial court's conclusion that Defendant violated this condition of her probation.

With respect to the allegation that Defendant entered the courthouse without an escort, we are unable to locate a specific condition of probation requiring Defendant to have an escort while in the courthouse. The conditions of Defendant's probation prohibit her from "contact with all victims and witnesses, specifically Judge Phyllis Gardner." There is no condition that requires Defendant to be escorted while in a courthouse. In fact, the testimony of the officers confirmed this fact as they could not point to a written policy or order from a superior officer to substantiate the requirement of an escort. Thus, the trial court's reliance on this activity as a violation of the condition of Defendant's probation was error. However, we determine that the error was harmless because there was evidence that Defendant violated at least one condition of probation. *See State v. Phillip Thomas Wilcox*, No. M2002-00667-CCA-R3-CD, 2003 WL 21047133, at *2 (Tenn. Crim. App. May 9, 2003) (holding that "[t]here need be only one violation of the conditions of . . . probation to support revocation"), *perm. app. denied* (Tenn. Oct. 13, 2003).

Further, the trial court did not abuse its discretion in ordering Defendant to return to probation. Defendant was not even "'entitled to a second grant of probation or another form of alternative sentencing.'" *State v. Casey Dupra Drennon*, No. M2014-02366-CCA-R3-CD, 2015 WL 6437212, at *2 (Tenn. Crim. App. Oct. 23, 2015) (quoting *State v. Jeffrey A. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), *perm. app. denied* (Tenn. Jun. 28, 1999)), *no perm. app. filed*; *see also State v. Timothy A. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002), *no perm. app. filed*. The trial court considered the testimony, concluded that Defendant violated the terms of her probated sentence, and acted well within its authority by initially revoking probation and ultimately ordering the original judgment into execution, returning Defendant to probation. Defendant is not entitled to relief.

_____

TIMOTHY L. EASTER, JUDGE